UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| ADRIAN BAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 5:20-cv-672-MHH-GMB |
| | ) |
| JEFFERSON DUNN, *et al.*, | ) |
| | ) |
| Defendants | ) |

# REPORT AND RECOMMENDATION

Plaintiff Adrian Baker has filed a *pro se* complaint and amended complaint seeking injunctive relief under 42 U.S.C. § 1983 for violations of her civil rights. Docs 1 & 7.  She names the following defendants in the complaint: Commissioner Jefferson Dunn, Dr. Tytell, Dr. Stone, Wexford Health Sources, Inc., and the Gender Dysphoria Management Committee.[1]  Doc. 1 at 3.  Baker seeks various forms of injunctive relief: the availability of an ethnic hair care product and cosmetic foundation in the prison commissary, medical care by an endocrinologist for hormone replacement therapy, permission to grow long hair consistent with the regulations applied to female inmates, and the prohibition of a retaliatory transfer.

---

[1] The original Order for Special Report (Doc. 10) did not construe Baker's complaint as stating a claim against Warden Toney.  Baker failed to notify the court that it had misconstrued her claims, as the order directed, but later filings have made clear that she intended to sue Toney.  For this reason, the court entered a second Order for Special Report (Doc. 47) and directed the Clerk of Court to add Toney as a defendant.  This report and recommendation does not address the claim pending against Toney.

Doc. 1 at 4. The complaint and amended complaint are before a Magistrate Judge for a preliminary report and recommendation. *See* 28 U.S.C. § 636(b)(1); *McCarthy v. Bronson*, 500 U.S. 136 (1991). For the reasons to follow, the Magistrate Judge recommends that the defendants' motions for summary judgment be granted.

## I. PROCEDERAL HISTORY

The court entered an Order for Special Report directing the Clerk to forward copies of the complaint and amended complaint to each of the named defendants and directing the defendants to file a special report addressing Baker's factual allegations. Doc. 10.

Defendants Dunn and Tytell filed a special report with supporting evidence, as did and Wexford and Dr. Stone. Docs. 28[2] & 29. The court ordered the remaining members of the Gender Dysphoria Management Committee to submit a waiver of service of process and special report or show cause why the court should not order formal service of process on each member. Doc. 31. Committee members Juan Bailey, Barbara Coe, Hugh Hood, and Felecia Greer filed waivers and responses to the order to show cause. Docs. 32–39. Committee members Patsy Clabo, Deborah Crook, Mark Fassl, Dr. Edward Kern, Tamara Rogers, and Christy Vincent also filed waivers and affidavits and adopted the special report filed by Dunn and Tytell. Doc.

---

[2] For an unknown reason, Assistant Deputy Commissioner Cheryl Price is included as one of the individuals filing a Special Report and Answer along with Dunn and Tytell. Doc. 28. Price is not a defendant in this action. *See* Docs. 1 & 7.

42. Committee member Deidre Wright filed a waiver but did not adopt the special report because she sits on the committee to represent the administration of female facilities, not male facilities. Doc. 42 at 1.  The court construed the special reports as motions for summary judgment and notified Baker that she had 21 days to respond to the motion for summary judgment by filing affidavits or other evidence. Doc. 43. Baker filed a response.[3] Doc. 44.

This matter is now before the court on the defendants' motions for summary judgment.

## II.  STANDARD OF REVIEW

Because the court construed the defendants' special reports as motions for summary judgment, Federal Rule of Civil Procedure 56 governs the motion.  Under Rule 56(a), summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  In making that assessment, the court views the evidence in the light most favorable to the non-moving party and draws all reasonable inferences against the moving party. *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The moving party has the initial burden of showing there are no genuine issues of material fact and she is due to prevail as a matter of law. *See Clark v. Coats & Clark,*

---

[3] Baker responded to Wexford and Dr. Stone's special report before the court ordered a response. *See* Docs. 29 & 30.

3

*Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Baker has the ultimate burden of proving her claims, so the moving party will be entitled to judgment as a matter of law on any claim unless she is able to show some evidence supporting each element of that claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532–33 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

*Bennett*, 898 F.2d at 1532 (citations and internal quotations omitted).

In determining whether to grant summary judgment, however, the court will consider any "specific facts" pled in a *pro se* plaintiff's sworn complaint. *See Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014) (citing *Perry v. Thompson*, 786 F.2d 1093, 1095 (11th Cir. 1986)). Additionally, because Baker is *pro se*, the court must construe the complaint more liberally than a pleading drafted by a lawyer. *Hughes v. Rowe*, 449 U.S. 5, 9 (1980).

### III. SUMMARY JUDGMENT FACTS

Baker is a transgender inmate undergoing hormone replacement therapy for gender dysphoria at Limestone Correctional Facility, an all-male prison, in Harvest,

Alabama. Doc. 1 at 3. The former warden at Limestone, Warden Estes, permitted black inmates with gender dysphoria to purchase a product marketed as Soft & Beautiful Hair Relaxer from the prison canteen or commissary. Doc. 1 at 3–4. The canteen stopped carrying the hair relaxer when Warden Toney replaced Warden Estes, and Warden Toney ignored Baker's requests to restock the product. Doc. 1 at 3–4. Baker also has not been permitted to grow long hair in accordance with Alabama Department of Corrections ("ADOC") female grooming policies or to purchase cosmetic foundation. Doc. 1 at 5.

Dr. Tytell, a senior psychologist with ADOC, is a member of the Gender Dysphoria Management Committee. Doc. 28-1 at 1. Dr. Tytell and the committee have the ability to allow or recommend for products to be dispensed at the commissary. Doc. 1 at 6. Baker believed that the committee would allow her requested accommodations when it met on March 13, 2020. Doc. 1 at 6. At the meeting, Dr. Tytell had no objection to making the hair relaxer and other commissary items available to female inmates. Doc. 28-1 at 1. But Cheryl Price, ADOC's Assistant Deputy Commissioner over operations, stated that safety and security concerns prevent Baker from using hair relaxer or growing long hair.[4] Doc. 28-2 at 1. For example, Price said that other male inmates have "weaponized" the hair

---

[4] Price does not dispute that Baker was allowed to buy the hair relaxer under a different warden, but maintains that she was not aware of this accommodation and would not have permitted it if she had known about it. Doc. 28-1 at 12.

5

relaxer product by heating it in a microwave and throwing it on staff members or other inmates, and explained that the number of times male inmates have done this "far exceeds the few times, if any when females have done the same or similar thing." Doc. 28-2 at 2. According to Price, longer hair can be used in inmate assaults and to hide contraband, and these concerns are more significant in male facilities than female. Doc. 28-2 at 3. Finally, Price voiced concerns that "hyper-feminized male inmates" with long hair are more vulnerable to exploitation and violence in a male prison. Doc. 28-2 at 3.

The other members of the Gender Dysphoria Management Committee work either with ADOC or Wexford, which has a contract with ADOC to provide health care and mental health services to inmates. The committee members who work at ADOC include Associate Director of Health Services Central Region Patsy Clabo, Deputy Commissioner of Health Services Deborah Crook, Inspector General Mark Fassl, Clinical Director of Psychiatry Dr. Edward Kern, EEOC Senior Officer Tamara Rogers, Prison Rape Elimination Act ("PREA") Director Christy Vincent, and Warden III for Tutwiler Correctional Facility Deidra Wright. Docs. 42-1 to -7. All of the ADOC committee members except Wright[5] agree with Dr. Tytell's recommendations and do not have a "psychologically-based objection" to Baker's

---

[5] Wright states that he has worked only at female correctional facilities and her role on the committee relates solely to those facilities. Doc. 42-7 at 1. She defers to ADOC leadership on questions related to male facilities. Doc. 42-7 at 1.

request for long hair or the commissary products. Docs. 42-1–42-6.  However, they also "do not take issue with Ms. Price's security-related concerns [as] [s]he would be in a better position to understand and address" those concerns. Docs. 42-1–42-6.

Dr. Stone is Wexford's Director of Psychiatry. Doc. 29-1 at 1.  The other members of the Gender Dysphoria Management Committee who work at Wexford include Program Director for Mental Health Barbara Coe, Physician Director Hugh Hood, Assistant Mental Health Program Director Juan Bailey, and Mental Health Site Program Manager for Tutwiler Correctional Facility Felicia Greer. Docs. 35-1, 36-1, 37-1 & 39-1.  Wexford does not have control the hair and cosmetic products sold at any ADOC correctional facility. Docs. 29-1 at 2–3; 35-1; 36-1; 37-1; 39-1.

Baker alleges that she has not seen an endocrinologist to monitor her medications even though Wexford promised that she would see one. Doc. 1 at 5.  She explains that Wexford treats all transgender inmates with the same hormones and medications, rather than on an individual basis. Doc. 1 at 5.  Wexford medical professionals have prescribed Aldactone, prenatal multivitamins, and Estradiol for Baker's gender dysphoria. Doc. 29-1 at 1, 3; Doc. 29-2 at 1–26.  They also have provided counseling to Baker for gender dysphoria and monitored her hormone levels. Doc. 29-2 at 27–41.  Baker alleges she has had suicidal ideations and needs mental health services for low self-esteem and depression because of the defendants'

7

refusal to accommodate her requests. Doc. 1 at 5–6. She also fears a transfer to another facility in retaliation for filing this action. Doc. 1 at 5–6.

## IV. ANALYSIS

As construed in the original special report (Doc. 10), Baker's complaint and amended complaint make three claims. First, Baker alleges that Wexford and Dr. Stone violated the Eighth Amendment when they were deliberately indifferent to her medical needs.[6] Doc. 1 at 5–6. Second, Baker alleges that Wexford, Dr. Stone, Dr. Tytell, and the Gender Dysphoria Management Committee violated her equal protection rights under the Fourteenth Amendment by preventing her from growing long hair and denying her access to hair relaxer and cosmetic foundation. Doc. 1 at 3–6; Doc. 7 at 1. Third, Baker alleges that she fears a future transfer because Commissioner Dunn has failed to intervene in the retaliatory transfers of other inmates. Doc. 1 at 6. For the following reasons, summary judgment is due to be granted as to Baker's claims against these defendants.

A.  **Deliberate Indifference Claims**

Although Baker invokes her equal protection rights under the Fourteenth Amendment in her complaint and amended complaint[7] (Doc. 1 at 3–6; Doc. 7 at 1),

---

[6] Wexford and Dr. Stone devote more than five pages of their special report to the argument that Baker does not have a claim for medical malpractice under the Alabama Medical Liability Act. Doc. 29 at 11–17. Baker has not asserted a state-law claim under AMLA. *See* Docs. 1 & 7.

[7] In her amended complaint, Baker also references Title VI and Title VII. Doc. 7 at 1. Title VI prohibits discrimination in any program or activity that receives federal funding. Title VII protects employees and job applicants from employment discrimination. Neither applies here.

her factual allegations include the claims that Wexford denied her access to an endocrinologist and "individualized" treatment. Doc. 1 at 5–6.  Because Dr. Stone is the Director of Psychiatry for Wexford (Doc. 29-1 at 1), the court construes Baker's allegations against Wexford to include Dr. Stone and to state a claim for deliberate indifference to her serious medical needs in violation of the Eighth Amendment. Doc. 1 at 5–6.

The "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks and citation omitted).  A deliberate indifference claim "entails both an objective and a subjective component." *Keohane v. Fla. Dep't of Corr.*, 952 F.3d 1257, 1266 (11th Cir. 2020) (citing *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)).  To prove a deliberate indifference claim, Baker first must show a "serious medical need," which is "one that is diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would recognize the need for medical treatment." *Burnette v. Taylor*, 533 F.3d 1325, 1330 (11th Cir. 2008).  Second, she must "prove that prison officials acted with deliberate indifference to that need by showing (1) that they had 'subjective knowledge of a risk of serious harm' and (2) that they 'disregard[ed]' that risk (3) by conduct that was 'more than mere negligence.'" *Keohane*, 952 F.3d at 1266 (quoting *Brown*, 387 F.3d at 1351).

"A prisoner bringing a deliberate-indifference claim has a steep hill to climb." *Id.* Medical treatment violates the Constitution only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). The United States Constitution does not guarantee "perfect, the best obtainable, or even very good" medical care. *Id.* at 1510 (internal quotation marks omitted). When a deliberate indifference claim "turns on the quality of the treatment provided, there is no constitutional violation as long as the medical care provided to the inmate is 'minimally adequate.'" *Blanchard v. White County Det. Ctr. Staff*, 262 F. App'x 959, 964 (11th Cir. 2008) (quoting *Harris*, 941 F.2d at 1504). Deliberate indifference is not established where an inmate received adequate care but desired a different mode of treatment. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985). Mere negligence, malpractice, or a difference of opinion between an inmate and the institution's medical staff on treatment will not support a deliberate indifference claim. *Id.* at 1505.

### 1. Dr. Stone

Baker claims that Dr. Stone was deliberately indifferent to her serious medical needs by denying her access to an endocrinologist and individualized treatment. Doc. 1 at 5–6. This claim fails. Baker acknowledges that Wexford doctors have prescribed Aldactone, prenatal multivitamins, and Estradiol for her gender dysphoria

in accordance with ADOC's policies for diagnosing and treating inmates with gender dysphoria. Doc. 30 at 8.  Baker does not argue that Dr. Stone intentionally delayed or denied her medical treatment. Doc. 29-1 at 3.  And it is undisputed that Wexford medical professionals have provided counseling to Baker for gender dysphoria and monitored her hormone levels. Doc. 29-2 at 27–41.

Under these circumstances, Baker's desire for a different mode of treatment cannot amount to a constitutional claim. *See Hamm*, 774 F.2d at 1575; *Blanchard*, 262 F. App'x at 964.  On the record before the court, Baker has failed to establish the subjective component of a deliberate indifference claim against Dr. Stone. *See Keohane*, 952 F.3d at 1266.  Accordingly, Dr. Stone's motion for summary judgment is due to be granted.

### 2. *Wexford*

Baker seeks to hold Wexford liable for the actions of its employees. Specifically, Baker states that Wexford has been "stringing me along telling me they will provide a[n] Endocrinologist for the safety of substitution of medications, doses, and side effects.  I have not seen one yet." Doc. 1 at 5.  She also asserts that "[e]ach transgender has been on the same hormone and spironolactone mg. as if we are the same genetics, and that is not 'individualized.'" Doc. 1 at 5.  Wexford is due summary judgment on this claim.

11

A corporation providing prison medical services cannot be held liable under § 1983 on the basis of *respondeat superior*. Instead, that corporation is exposed to tort liability only if the constitutional violation was the result of a corporate policy or custom. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Buckner v. Toro*, 116 F.3d 450, 452 (11th Cir. 1997) (explaining that the *Monell* policy or custom requirement applies to private entities acting in place of municipalities, such as prison medical providers). In other words, a plaintiff must show that the corporation has a policy, practice, or custom that was the moving force behind the deprivation of her constitutional rights. *See Craig v. Floyd County, Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). A plaintiff generally must show a persistent and widespread practice in order to establish a custom. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004).

Baker challenges the treatment she received from Wexford medical personnel, but she does not identify any Wexford policy or custom that motivated their treatment decisions. Baker also has not established a constitutional violation resulting from any Wexford policy or custom. Accordingly, summary judgment on this claim is due to be granted in Wexford's favor.

**B.     Equal Protection Claims**

"To show an equal protection violation, a plaintiff must demonstrate that [s]he was treated differently from similarly situated persons and that any such disparate

treatment was based on h[er] membership in a protected class." *Wusiya v. City of Miami Beach*, 614 F. App'x 389, 393 (11th Cir. 2015) (citing *DeYoung v. Owens*, 646 F.3d 1319, 1327–28 (11th Cir. 2011)). In support of her equal protection claims, Baker asserts that she is similarly situated to female prisoners housed in Tutwiler prison[8] but has been denied the ability to grow long hair and purchase hair relaxer. Doc. 1 at 3–6; Doc. 7 at 1. Baker also claims that white male and transgender prisoners have access to cosmetic products, but she, as a black transgender inmate, does not have access to cosmetic foundation through the canteen. Doc. 1 at 5; Doc. 7 at 1.

The problem for Baker is that these claims, as they were construed in the original special report, are stated against defendants who cannot provide her any relief. Baker's equal protection claims against Warden Toney remain pending, and they may fare differently, but the evidence establishes that Wexford and its employees have no control over the hair or cosmetic products sold at Limestone.

---

[8] Baker has not shown that she is similarly situated to ADOC inmates housed in Tutwiler, a female prison. Baker is housed in a male facility. Doc. 1 at 2. She and the Tutwiler prisoners are in different housing classifications and are subject to different policies. *See Armstrong v. Mid-Level Practitioner John B. Connally Unit*, 2020 WL 230887, at *8 (W.D. Tex. Jan. 15, 2020) (finding a male transgender inmate not similarly situated with female inmates for equal protection purposes where male inmates are housed in a unit for male offenders and female inmates are housed in a unit for female offenders); *see also Longoria v. Dretke*, 507 F.3d 898, 904–05 (5th Cir. 2007) (holding male prison's grooming policies did not violate equal protection rights because of differing policies at female prisons); *Williams v. Kelly*, 2018 WL 4403381, at *12 (E.D. La. Aug. 27, 2018) (finding that a transgender prisoner seeking sex reassignment surgery was not similarly situated with female inmates requiring surgery for specific gynecological conditions).

*See* Docs. 29-1 at 2–3; 35-1; 36-1; 37-1; 39-1.  Dr. Tytell and the other Gender Dysphoria Management Committee members employed by the ADOC already made their position known that they have no objection to allowing access to hair relaxer and other commissary items available to female inmates or to permitting transgender inmates to grow long hair. *See* Doc. 28-1 at 1; Docs. 42-1–42-6.  Baker does not dispute these facts, and there is no evidence in the record that any of these defendants have the authority to make decisions about her access to products in the commissary or to make any decisions about the length of her hair.  Accordingly, Baker's equal protection claims against Wexford, Dr. Stone, the committee members employed by Wexford, Dr. Tytell, and the committee members employed by the ADOC are due to be dismissed.

C.  **Retaliatory Transfer Claim**

Baker seeks an injunction to prevent her transfer from Limestone to another facility in retaliation for filing this action. Doc. 1 at 5.  She claims that the "ADOC has established a pattern or practice . . . of [retaliating against] inmates that seek civil issues within the courts, by retaliatory transfers and Commissioner Jefferson Dunn has not intervened to stop such practice." Doc. 1 at 6.

Prison officials may not transfer an inmate to another prison in retaliation for exercising her First Amendment rights to file a civil action, *see Smith v. Fla. Dep't of Corr*., 713 F.3d 1059, 1063 (11th Cir. 2013), but standing to bring a claim for a

retaliatory transfer requires more than an allegation of the potential for a future reassignment. *See Burton v. Paramo*, 2017 WL 6048805, at *5 (S.D. Cal. Dec. 5, 2017). Baker's fear of a retaliatory transfer is purely speculative at this point, and in fact the court's docket reflects that she has not been transferred in the two years since she filed this action. Accordingly, Baker's preemptive claim for retaliation against Commissioner Dunn is due to be dismissed for her lack of standing.

## V.  RECOMMENDATION

For these reasons, the Magistrate Judge RECOMMENDS that the motions for summary judgment (Docs. 28, 29 & 42) be GRANTED and the claims against these defendants be DISMISSED with prejudice.

## VI.  NOTICE OF RIGHT TO OBJECT

Any party may file specific written objections to this report and recommendation. Any objections must be filed with the Clerk of Court within **14 days.** The objecting party must identify every objectionable finding of fact or recommendation and state the specific basis for every objection. The objecting party also must identify every claim in the complaint that the report and recommendation has not addressed. Objections should not contain new allegations, present additional evidence, or repeat legal arguments.

A party who fails to object to factual or legal conclusions in the Magistrate Judge's report and recommendation waives the right to challenge on appeal those

same conclusions adopted in the District Judge's order. Without a proper objection, however, the court on appeal may review the unobjected-to factual and legal conclusions for plain error if necessary in the interests of justice. 11th Cir. R. 3-1.

After receiving the objections, a District Judge will conduct a *de novo* review of the relevant portions of the report and recommendation and may accept, reject, or modify in whole or in part the Magistrate Judge's findings of fact and recommendations. The District Judge will conduct a hearing if required by law and may exercise discretion to conduct a hearing or otherwise receive additional evidence. Otherwise, the District Judge may consider the record developed before the Magistrate Judge in making an independent determination of the relevant legal issues. The District Judge also may refer this action back to the Magistrate Judge with instructions for further proceedings.

A party may not appeal the Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. A party may appeal only from a final judgment entered by a District Judge.

DONE and ORDERED on June 8, 2022.

_____
GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE